Chief Judge Fuld.
The court granted leave to appeal in this case to consider, primarily, whether there was reasonable basis for the action of the State Labor Relations Board in extending the life of the union certification beyond the customary one-year period, despite a turnover of employees, and even though the delay in bargaining was attributable to the union.
In an election held in December of 1966, four of the seven pharmacists employed by the Roosevelt Hospital, a nonprofitmaking hospital, located in New York City, voted in favor of representation by Local 1199, Drug and Hospital Union. Overruling the hospital’s objection to the election—on the ground that the local had coerced and intimidated one of those four employees to cast his ballot for it — the board certified the union as the exclusive bargaining representative of Roosevelt’s pharmacists in June, 1967.
The hospital, asserting that the certification was improper because the local did not represent the employees, refused to enter into negotiations with the union.
Such a refusal to bargain constituted an unfair labor practice (Labor Law, § 704, subd. 6). However, instead of following the traditional and approved procedure of filing an unfair labor practice charge against the hospital, Local 1199 invoked the mediation and compulsory arbitration procedures of section *31 716 of the State Labor Relations Act.[1] The compulsory arbitration proceeding thus initiated resulted in an award in favor of the local, whereupon the hospital obtained a court order staying its enforcement pending the expected decision by our court in Long Is. Coll. Hosp. v. Catherwood (23 N Y 2d 20, app. dsmd. 394 U. S. 716). In October of 1968, we held in that case that the section 716 procedures may not be invoked initially where the employer challenges the board’s certification of the union’s representation status and seeks judicial review (23 N Y 2d, at pp. 32, 35).[2] Two months later, guided by that decision, Local 1199 proceeded to file a charge alleging a violation of section 704 (subd. 6) of the Act and, based thereon, the board issued its complaint charging the hospital with a refusal to bargain with the union.
In the interval between the election and the filing of the charge, there had been a turnover of the pharmacists employed by the hospital. Six of the seven who had been in its employ at the time of the election were no longer with it and, ultimately, we were told on oral argument, all seven of the pharmacists were replaced. Relying upon these facts, the hospital sought a vacatur of the board’s certification and an investigation of the union’s representational status. The board denied the application. By its order, dated October 31, 1969, it directed, first, that Local 1199’s certification be extended for a period of one year ‘ ‘ from the date of the issuance of this Decision * * *
or from the completion of any judicial review thereof which may follow ” and, second, that the hospital “ [c]ease and desist from refusing to bargain collectively ’ ’ with the union.
The Appellate Division unanimously confirmed the board’s determination and directed enforcement of its order. We agree *32 with this disposition. The board’s findings and conclnsions are fully supported by substantial evidence, and the court may not substitute its judgment for the agency’s. (Labor Law, § 707, subd. 2; see, e.g., Matter of Jernigan v. New York State Labor Relations Bd., 300 N. Y. 482, 483; Matter of Stork Rest. v. Boland, 282 N. Y. 256, 267, 274; see, also, Matter of Tompkins v. Board of Regents of Univ. of State of N. Y., 299 N. Y. 469, 474; Matter of Humphrey v. State Ins. Fund, 298 N. Y. 327, 332.)
In seeking a reversal, the hospital urges that the board may not lawfully extend the life of the union certification where the employees presently in the bargaining unit were not in its employ at the time of the election. The argument lacks merit. The board is vested with the responsibility of effectuating the policies of the State Labor Relations Act (Labor Law, § 700). On occasion, this calls for a balancing of ‘ ‘ two separate, and at times conflicting, objectives ”, (Matter of Goldberg, 28 NYSLRB 460, 462.) The first objective is to protect the right of employees to select a bargaining representative of their own choosing and the second, which comes into play once such a representative has been chosen, is to promote stability in labor relations, to permit the bargaining relationship not only to exist but to function for a reasonable period of time. As one court expressed it, the bargaining relationship "must be endowed with a longevity sufficient to accomplish its essential purpose.” (National Labor Relations Bd v. Appalachian Elec. Power Co., 140 F. 2d 217, 221.)
The task of determining the length of time ¡such relationship is to continue must, of necessity, be left to the sound discretion of the board. The Legislature expressly authorized it to make such rules ‘‘as may be necessary to carry out the provisions of this article including the determination of the life of the selected representatives ” (Labor Law, § 702, subd. 7) and, pursuant to that authorization, the board promulgated section 19 of its General Rules and Regulations (12 NYCRR 251.26). After declaring that, “ [w]hen a representative has been certified by the board, such certification shall remain in effect for one year from the date thereof, and thereafter until such time as it shall be made to appear to the board that the certified representative does not represent a majority of the employees within an appropriate unit ’ ’, section 19 goes on to recite:
*33 “In any case where unusual or extraordinary circumstances require such action, or where probable cause is shown that such action may be necessary to prevent the occurrence or continuation of an unfair labor practice, the board, in its discretion, may shorten or extend the life of the original certification. When the board shall find that during the life of a certification the employer has refused to bargain collectively with the certified representative, the time of the continuance of such refusal to bargain shall not be a part of the time limited in computing the life of the certification.”
In the case before us, the board found it necessary to extend the life of the certification and to direct the hospital to bargain with the union “ in order effectively to remedy [the hospital’s] unfair labor practices and to effectuate the policies of the Act.” Under the circumstances here presented, the board was thoroughly justified in taking such action, rather than directing a new election, despite the turnover in personnel. Not infrequently, the loss of a numerical majority is brought about by the long delays resulting from an employer’s refusal to bargain with the certified union. As the board had occasion to observe some years ago, “ [e]mployees have left their employment when they were unable within a reasonable time to obtain improved wages, hours and working conditions through collective bargaining. Particularly where there is apt to be a frequent turnover of employees, an employer may feel reasonably certain that if he only delays long enough, the employee will leave of his own accord before a bargaining order is issued, thereby hoping to escape altogether his obligation of bargaining under the Act. An employer ought not, in such a situation, be allowed to profit from his own wrongdoing.” (Matter of Loram Realty Corp., 14 NYSLRB 117, 118.)
Indeed, if the loss of a majority because of a turnover of employees were to have the effect of putting an end to a certification previously issued, the employer would be relieved of its statutory obligation to bargain with the union and, if an agreement were entered into, it would come to an end whenever the composition of the employees happened to change. (See Matter of Triboro Coach Corp. v. New York State Labor Relations Bd., *34 286 N. Y. 314, 323.) The board’s policy in such situations, of declining to shorten the life of the certification promotes stability and labor relations, and this policy consideration outweighs the desirability of giving effect to possibly fluctuating wishes of the affected employees. (See Matter of L. Morales & Sons, Inc., 12 NYSLRB 328, 335, enforced 113 N. Y. S. 2d 518; see, also, Hanslowe, Procedures and Policies of the New York State Labor Relations Board [1964], pp. 113-114.)
It follows from what has already been written that there is no support for the hospital’s assertion that section 19 of the board’s rules and regulations does not apply because the delay was caused by the union and not by it. The agency’s construction and application of its own rules are entitled to controlling weight (see, e.g., Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108; Matter of Broadway-Amsterdam Assoc. v. Berman, 31 A D 2d 907; Udall v. Tollman, 380 U. S. 1, 16), and it may not be said that it acted irrationally in deciding that the union was privileged to await the outcome of our decision in the Long Island College Hospital case before filing its unlawful practice charge and that the ensuing delay did not effect an abandonment or forfeiture of its right to collective bargaining. Delays occasioned by the union’s exercise of what it reasonably believed to be its right under the statute did not call for a redetermination of its status as a representative any more than would delays resulting from the slowness of administrative action or from an employer’s pursuit of his judicial remedies in seeking court review of the board’s certification. (See, e.g., Matter of New York State Labor Relations Bd. v. Harmony Tea Shoppe, 15 NYSLRB 91, 106, enforced 285 App. Div. 1162, affd. 2 N Y 2d 980; Matter of New York State Labor Relations Bd. v. Timen, 264 App. Div. 120; Franks Bros. Co. v. Labor Bd., 321 U. S. 702, 704; Labor Bd. v. P. Lorillard Co., 314 U. S. 512, 513.)
Nor is there basis for the hospital’s further contention that the employees will never be given an opportunity to vote. They will have such an opportunity once bargaining has taken place under the board’s certification. At such time, the hospital will be at liberty to question the representation and request the board to order a new election (Labor Law, § 705, subd. 3; General *35 Rules of State Labor Relations Board, §§ 19, 39 [12 NYCRR 251.26; 253.6]).
The life of a certification may not, of course, be extended where no reasonable excuse or explanation exists for the union’s delay in filing a refusal to bargain charge but, in the case before us, the board extended the certification — and ordered the hospital to engage in collective bargaining — for good and sufficient reasons. What occurred here, though, is not likely to occur again, now that the procedure to be followed in this type of situation has been definitively set forth in this court’s Long Island College Hospital decision (23 N Y 2d 20, supra) and in the Legislature’s recent clarifying amendments to section 716 of the Act (L. 1969, ch. 526, §§ 2, 3).
We would but add that we have examined the other objections to the board’s order—including the hospital’s claim that the union engaged in pre-election acts of intimidation which vitiated the election and invalidated the certification based upon it — and find them without substance.
The order appealed from should be affirmed, with costs.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order affirmed.

. This was, we note, the course which the union involved in the then pending Long Island College Hospital litigation had adopted and which the Appellate Division had, in January of 1968 — several months prior to our review of the case (23 N Y 2d 20)—upheld as proper and permissible. (See Long Is. Coll. Hosp. v. Catherwood, 28 A D 2d 1092 and Matter of Long Is. Coll. Hosp. v. Catherwood, 29 A D 2d 642.)

. As the court pointed out in the Long Island College Hospital case (23 N Y 2d 20, supra), unless the union files an unfair labor practice charge against the employer, the latter is unable to obtain judicial review of the board’s certification (pp. 32, 35).