Joseph F. Rohan, Respondent, v Richard J. Bartlett, as New York State Administrative Judge, et al., Appellants.

Second Department, August 13, 1979

APPEARANCES OF COUNSEL

*Michael R. Juviler* (*Marjorie Weinberg Rooney* and *Michael Colodner* of counsel), for appellants.

*Donovan & Donovan (Francis J. Donovan* and *Joseph D. Donovan* of counsel), for respondent.

**OPINION OF THE COURT**

SHAPIRO, J.

In a proceeding pursuant to CPLR article 78 the New York State and the Nassau County Administrative Judges appeal from a judgment directing them to restore petitioner to the position of confidential attendant and to pay him the appropriate salary retroactive to January 1, 1978, less the amount of earnings, if any, he received from that date. We reverse and dismiss the proceeding.

### THE FACTS AND THE APPLICABLE STATUTES

In February, 1975 petitioner was appointed as a confidential attendant (a noncompetitive and confidential position) to Honorable BERTRAM HARNETT, then a Justice of the Supreme Court, Nassau County. The appointment was made pursuant to former section 28 of article VI of the State Constitution and section 168 of the Judiciary Law, which, *inter alia,* respectively provided:

Constitution (art VI, § 28): "The authority and responsibility for the administrative supervision of the unified court system for the state shall be vested in the administrative board of the judicial conference."

Judiciary Law (§ 168): "Power of supreme court justices in Kings, Queens, Richmond, Nassau and Suffolk counties to appoint court officers. [T]he justice or justices of the supreme court residing in Nassau county, or a majority of them; the justice or justices of the supreme court residing in Suffolk county, or a majority of them, may appoint, and at pleasure remove all clerks, attendants, messengers, and court officers in the supreme court in said counties, and fix their compensation except where such compensation is fixed by law."

In January, 1977, Mr. Justice HARNETT resigned. Petitioner nevertheless was retained on the court payroll in accordance with the provisions of former section 222 of the Judiciary Law (as amd by L 1969, ch 742), which provided: "Wherever, under the provisions of any law heretofore adopted, a judge or justice of the unified court system is authorized to appoint personal assistants to render to him legal or clerical services, the power of such judge or justice to make such appointments shall continue, notwithstanding the provisions of section two

hundred fourteen of this chapter, in accordance with the standards and administrative policies adopted by the administrative board pursuant to the provisions of section two hundred twelve of this chapter and subject to the final determination of budgets by appropriating bodies as provided in section twenty-nine of article six of the constitution. *Should a judge or justice die, or cease to hold office, the personal assistants thus appointed by him shall continue in office until an appointment shall be made under this section by the judge or justice elected, or appointed to fill such vacancy. The judge or justices of the court, or a majority of them shall, until the appointment or election of such succeeding judge or justice, regulate, determine and fix the duties of any such personal assistant thus continued in office.*" (Emphasis supplied.)

The foregoing section of the Judiciary Law was repealed (L 1978, ch 156, § 6, eff May 19, 1978) and replaced by what is now section 36 of the same law which reads:

"Personal assistants to judges and justices.

"1. Notwithstanding any other provisions of law, each justice of the supreme court may appoint and at pleasure remove one law clerk and one secretary, subject to standards and administrative policies promulgated pursuant to section twenty-eight of article six of the constitution.

"2. Should a judge or justice of the unified court system cease to hold office for any reason other than expiration of his term, *his personal assistants shall continue in office until a successor is appointed or elected to fill such vacancy. Until such vacancy* is filled, the chief administrator of the courts shall determine the functions to be performed by such personal assistants." (Emphasis supplied.)

Thus, on April 1, 1977 petitioner was still listed on the State payroll as a confidential attendant, although no appointment had been made to fill the vacancy created by the resignation of Mr. Justice HARNETT. On April 26, 1977 ELI WAGER was sworn in as a Supreme Court Justice to fill the position vacated by Mr. Justice HARNETT and the petitioner was assigned to serve him as his confidential attendant. It is not evident from the record who made that assignment. However, that assignment was probably made, formally or informally, in accordance with the revision (at a meeting of the Administrative Board held on February 18, 1977) of subdivision (a) of section 20.3 of the board's rules (22 NYCRR 20.3), effective April 1, 1977. Section 20.3 provides:

"Requirements for appointment of personal assistants to justices and judges.

"(a) Each justice of the Supreme Court may appoint and at pleasure remove one law secretary to justice and one secretary to justice. A law secretary to justice appointed pursuant to this section must meet the requirements set forth in subdivision (b) of this section. *No justice of the Supreme Court may appoint or continue to employ any other personal assistant to render legal or clerical services unless approved by the administrative board.*" (Emphasis supplied.)

Petitioner's "assignment" to Mr. Justice WAGER proved to be short-lived. The latter was defeated for election in November, 1977 and he left the bench on December 31, 1977. On January 3, 1978 the Chief Clerk of the court, purportedly at the direction of appellant Mr. Justice Widlitz, Administrative Judge of Nassau County, advised petitioner that his services were terminated as of December 31, 1977.

In an affidavit opposing petitioner's article 78 proceeding for reinstatement, appellant Richard J. Bartlett, then New York State Administrative Judge, correctly stated that under the rule of the Administrative Board quoted above (22 NYCRR 20.3), no Justice of the Supreme Court had the right to appoint or continue to employ a confidential attendant without the approval of the Administrative Board, and that the board had approved the continuation in employment of all incumbent confidential attendants as of April 1, 1977 as reflected by the minutes of a board meeting, held on February 18, 1977. Appellant Bartlett further declared in his affidavit that it was "the intent of the Administrative Board [at its February 18, 1977 meeting] to phase out the position of Confidential Attendant in the unified court system and *not to approve any additional appointments to that position.*" (Emphasis supplied.)

### THE LAW

The position of confidential attendant to a Justice of the Supreme Court has never been protected by tenure. A confidential attendant is employed "at pleasure" of the Justice who appointed him, and that Justice can "at pleasure" remove him (Judiciary Law, § 168). If the Justice were to "die, or cease to hold office", the attendant's position was to continue only until the succeeding Justice decided who was to be his attend-

ant (Judiciary Law, former § 222). That law indicated a compassionate concern for the nontenured attendant and gave him the opportunity to obtain a new lease of employment life since the succeeding Justice, "at pleasure", could decide that his services should be continued as *his* attendant. The intent of the statute was that the attendant's continuation on the payroll should not suffer any hiatus if he were ultimately appointed by the new Justice, nor the shock of sudden unemployment for a reason beyond his control, i.e., the death or cessation of office of the Justice who had appointed him.

Therefore, petitioner's employment did not cease when Mr. Justice HARNETT resigned in January, 1977. In the ordinary course his continued employment depended upon whether it was the succeeding Justice's "pleasure" to retain him. One thing was *certain* —his employment continued until the investiture of the succeeding Justice. One thing was *uncertain* — whether the succeeding Justice would then choose to appoint him.

As of April 1, 1977, no Justice had been appointed to succeed Mr. Justice HARNETT, so petitioner was still employed pursuant to the hiatus protection of section 222 of the Judiciary Law. Thus after April 26, when the Honorable ELI WAGER was appointed to fill the vacancy created by Mr. Justice HARNETT's resignation, petitioner's continued employment *in the ordinary course,* would depend upon whether Mr. Justice WAGER (or any other Justice) would choose to appoint him as *his* confidential attendant. But the course was not ordinary for, as noted, the Administrative Board of the Judicial Conference, on February 18, 1977, adopted a revision of subdivision (a) of section 20.3 of its rules, effective April 1, 1977 (22 NYCRR 20.3; now Rules of the Chief Judge), which in relevant part stated: "No justice of the Supreme Court may appoint or continue to employ any * * * personal assistant [other than one law secretary and one secretary] * * * unless approved by the administrative board".[1]

Therefore, Mr. Justice WAGER, on his investiture on April

1. The minutes show that this was recommended by Richard J. Bartlett, then the New York State Administrative Judge, who "further recommended that the Board approve the continuation in employment of all existing personal assistants". He also "explained that the amended rule would afford the Board the opportunity to evaluate the need for each position as vacancies occur after April 1. The proposed amendments to section 20.3 were thereupon approved unanimously. The Board also approved the continuation of employment of all existing personal assistants to judges."

26, 1977, could not appoint *anyone* to be his confidential attendant unless he obtained the approval of the board.[2]

The essence of petitioner's position is that a literal reading of former section 222 of the Judiciary Law mandates his continued employment until the successor Justice makes a new appointment, and that since neither Mr. Justice WAGER nor the latter's successor could make a new appointment, petitioner's employment continued. Thus, the happenstance of the board's amendment of subdivision (a) of section 20.3 of its rules (eff April 1, 1977) which essentially eliminated the power of a new Justice to appoint a confidential attendant, has been serendipitously grasped by petitioner as a mandate for his continued employment. If petitioner is correct he has obtained a unique form of tenure based on an alleged discrepancy in the interlocking of former section 222 of the Judiciary Law with subdivision (a) of section 20.3 of the Rules of the Administrative Board.

That the Administrative Board had the power to abolish the position of confidential attendant seems to be without question *(Matter of Blyn v Bartlett,* 39 NY2d 349). In *Blyn* the court upheld the validity of a resolution of the board abolishing that position, stating (p 358) that the board had properly "exercised the power it clearly has under the Constitution and Judiciary Law of ascertaining and mandating needs and priorities as respects court programs and personnel". Further, stated the court (p 361): "It would thwart the overriding intent and purpose of the unified court system, however, to say that the Judges could abolish, change or alter these positions under the appointing authority. Such changes are matters of policy, in this case budget policy, clearly left to authorized centralized administration."

The board's unofficial "continuation of employment of all existing personal assistants to judges" (as stated in the minutes of its meeting of February 18, 1977) could properly be interpreted by it as applying only to those persons who were officially assigned to the services of a Judge. It would defy logic for the board to have continued petitioner as a floating confidential attendant while essentially denying to any incoming Justice the right to appoint one. In any event, the interpretation of the appellant Bartlett (that the board's "saving"

---

2. The record shows that since April 1, 1977 "no * * * incoming justice of the Supreme Court, Nassau County, has been permitted to appoint a confidential attendant."

recommendation did not apply to confidential attendants who were not serving a particular Justice) is not irrational and is entitled to great weight (see *Matter of Sigety v Ingraham*, 29 NY2d 110, 114; *Matter of Roosevelt Hosp. v New York State Labor Relations Bd.*, 27 NY2d 25).

Former section 222 of the Judiciary Law was enacted at a time when the right of a new Justice of the Supreme Court to appoint a confidential attendant was traditional and apparently entrenched. Since it was not then conceived that a new Justice would not have such power, it seemed not unnatural for the law to provide that a confidential attendant to the departed Justice should continue in office until he could learn whether the new Justice would appoint him.

The granting of a period of employment to a confidential attendant to continue beyond the date of investiture of the new Justice, up to the time when the latter would decide who his confidential attendant should be, may not be converted, as petitioner is seeking to do here, into an anomalous tenure based on the post-April 1, 1977 prohibition of appointment of a confidential attendant by a new Justice. It may be fairly assumed that investiture of permanent tenure was neither intended by former section 222 of the Judiciary Law nor by the February 18, 1977 amendment by the board of subdivision (a) of section 20.3 of its rules (cf. *New York State Bankers Assn. v Albright*, 38 NY2d 430, 436-437).

Petitioner argues that there is an inconsistency between appellant Bartlett's statement (on the one hand) that it was "the intent of the Administrative Board [at its February 18, 1977 meeting] to phase out the position of Confidential Attendant in the unified court system and not to approve any additional appointments to that position", and (on the other hand) the statement in the February 18, 1977 minutes that "He [Bartlett] explained that the amended rule would afford the Board the opportunity to evaluate the need for each position as vacancies occur after April 1 [1977]." I find no such inconsistency for, as I see it, the combined effect of those two statements is simply that it was to be the *general* policy to phase out the position of confidential attendant but to reserve the possibility for appointment in a special case where a new Justice might be in particular need of a confidential attendant (e.g., if he were blind or otherwise physically incapacitated).

Nor do I believe that it was inappropriate or improper for the board to refuse to take an "either-or" attitude towards

confidential attendants, i.e., that it had to either abolish the position of confidential attendants for all Supreme Court Justices, or to retain them for all (future as well as incumbent) Justices. Budgetary needs could properly be met by attrition of incumbent confidential attendants. As stated in *Matter of Blynn v Bartlett* (39 NY2d 349, 361, *supra),* "[s]uch changes are matters of policy, in this case budget policy, clearly left to authorized centralized administration." The rule promulgated by the board that new confidential attendants were not to be appointed was merely another form of a widely-accepted attrition policy long since adopted by many other divisions of government of which we take judicial notice.

The judgment which in effect gave petitioner permanent tenure as a "floating" confidential attendant should therefore be reversed and his petition should be dismissed without costs.

TITONE, J. P. (dissenting). In my opinion the minutes of the board's meeting belie the categorical assertion of appellant Bartlett that the board intended to "phase out" such positions simply by disapproving, without reason or explanation, any and all requests for confidential attendants made by persons becoming Supreme Court Justices after April 1, 1977. After first reciting that appellant Bartlett recommended for the board's approval (which was forthcoming) both an amendment to section 20.3 of the board's rules, set forth in the majority opinion, effective April 1, 1977, and the continuation of all existing personal assistants to Judges and Justices, the February 18, 1977 minutes contain the following pertinent language: *"He [appellant Bartlett] explained that the amended rule would afford the Board the opportunity to evaluate the need for each position as vacancies occur after April 1 [1977]."* (Emphasis supplied.)

The emphasized language quoted above clearly manifests that it was not the intention of the board to refuse, *carte blanche,* to approve the appointment of a confidential assistant by a person attaining the position of Supreme Court Justice after April 1, 1977, but that such body would weigh the *"need"* of each individual elevated to the Supreme Court bench after that date; and then, and only then, render a reasoned determination either approving or disapproving such an appointment on the merits.

Contrary to the position taken by the majority, I do not believe the minutes of the board's meeting and appellant Bartlett's subsequent affidavit can be read in reference to each

other so as to reach a combined effect, namely that the board intended to institute a *general policy* of phasing out the position of confidential attendant. In my opinion the thrust of one is completely at variance with the other. The minutes reveal an announced intention to have an evaluation as to the individual "need" in each case; the affidavit on the other hand promulgates an arbitrary and unauthorized one-man administrative "meat axe" program of job elimination. This is clearly evidenced by the following language contained therein: "the intent of the Administrative Board [at its February 18, 1977 meeting, was] *not to approve any additional appointments to that position*" (emphasis supplied).

Under its "Title Specifications" for a confidential attendant, the Administrative Board lists the duties of one in that position as, *inter alia:* "Acts as attendant and receptionist for Justice or Judge; procures or returns for the Justice or Judge such papers, files and books as the Justice or Judge directs; oversees the maintenance of Justice's or Judge's Chambers; keeps indexed records of Justice's or Judge's opinions and decisions and maintains simple files; may act as court officer."

I find no rational basis in the record to justify a conclusion that persons attaining the status of Justice of the Supreme Court before April 1, 1977, would have the continued and requisite need for the services of confidential attendants as spelled out in the board's job specification, whereas their judicial brethren who attained such status after that date would be completely devoid of such need.

The majority opinion contains dicta suggesting that the combined effect of the minutes and the affidavit may have been to reserve the possibility for appointment of a confidential attendant for a Justice attaining such position after April 1, 1977, where such Justice may be "blind or otherwise physically incapacitated". Such speculative criterion on its face is arbitrary, capricious and discriminatory in this instance since there is no rational basis for not also applying it to Justices attaining such positions before the April 1 date in question.

Constitutionally the Supreme Court of this State has general original jurisdiction in *equity* as well as law (NY Const, art VI, § 7). In its broadest and most general signification, the term "equity" denotes the spirit and the habit of fairness, justice, and right dealing which would regulate the intercourse of men with men—"*the rule of doing to all others as*

*we desire them to do to us"* (Black's Law Dictionary [4th ed], p 634; emphasis supplied). Simple logic, common sense, and fundamental justice mandate that such concept be recognized and adhered to within the court system itself.

All judicial and nonjudicial members of the court system should be treated fairly and equally under relevant statutes and administrative rules; no administrative court rule should be promulgated or administered in such a manner that certain members of the system are treated differently from others, without a rational basis therefor. Phasing out of public employees by attrition, and tending to the needs of Supreme Court Justices, must, like all other administrative decisions, withstand the test of constitutionality, fair dealing, and equal treatment under the law. In this instance the effect of the majority's determination upholding the appellants' posture is that some Justices of the Supreme Court and confidential attendants are treated "more equitably", or "more equally" than others, solely because of the happenstance of date.

I also believe that the majority's reliance on the *Blyn* case is misplaced *(Matter of Blyn v Bartlett,* 50 AD2d 442, affd 39 NY2d 349). In *Blyn,* the City of New York, with the cooperation and approval of the Administrative Board of the Judicial Conference determined, for *budgetary reasons,* that positions of confidential attendants in the Supreme Court, First Judicial Department, and Law Secretary in the Civil Court of the City of New York should be abolished (evidently "across the board"). *All law secretaries to Civil Court Judges* were evidently dismissed and replaced by a pool of 40 law assistants (see *Matter of Blyn v Bartlett,* 50 AD2d 442, 446-447, *supra).* Although the Third Department, with the concurrence of the Court of Appeals, upheld the right of the State Administrative Judge and the Administrative Board to eliminate such positions ("across the board") for budgetary reasons, it did make the following observation which is relevant in this matter (50 AD2d, at p 449): *"We disagree, however, with the argument advanced by appellants that the Administrative Board and/or Administrative Judge have the power to unilaterally eliminate these positions.* Under the clear terms of section 222 of the Judiciary Law and section 29 of article VI of the New York State Constitution the 'final determination' of the budgets in these appeals is in the hands of the 'appropriate governing bodies of * * * the city of New York' (NY Const, art VI, § 29, subd d). Under the constitutional and

statutory scheme above described, the elimination of the positions requires the co-operation of both the Administrative Board and the city. We hold only that the board is empowered to forward to the city a budget which eliminates the positions in issue herein and that the city, by approving the budget submitted by the board, may make a 'final determination' eliminating the positions." (Emphasis supplied.)

In the matter at bar, no attempt was made by appellant Bartlett, either expressly or impliedly, to justify petitioner's removal for budgetary reasons. In fact the record clearly demonstrates that he unilaterally eliminated petitioner from his position without a clear, unequivocal and constitutional mandate emanating from the Administrative Board.

Thus, the disapproval of all appointments of confidential attendants after April 1, 1977, without sufficient reasons being given for such action is void and contrary to the stated position of the board at its February 18, 1977 meeting, and petitioner should still be considered an incumbent in such position retroactive to December 31, 1977, by virtue of the following language contained in former section 222 of the Judiciary Law: "Should a judge or justice die, or cease to hold office, the personal assistants thus appointed by him shall continue in office until an appointment shall be made under the section by the judge or justice elected, or appointed to fill such vacancy." (Cf. *Matter of Blyn v Bartlett,* 50 AD2d 442, 449, affd 39 NY2d 349, *supra.)*

Accordingly, the notification by appellant Widlitz, Administrative Judge of Nassau County, to petitioner via the Chief Clerk, was wholly ineffective to abolish the position in question. I therefore vote to affirm.

MARTUSCELLO and MANGANO, JJ., concur with SHAPIRO, J.; TITONE, J. P., dissents and votes to affirm the judgment, with an opinion.

Judgment of the Supreme Court, Nassau County, dated April 12, 1978, reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits.