In the Matter of EAST CLINTON DEVELOPERS, INC., Respondent, v TOWN OF CLINTON, Appellant.

Second Department, August 30, 1982

### APPEARANCES OF COUNSEL

*Corbally, Gartland & Rappleyea* for appellant.

*Reed & Reed* (*John M. Reed* of counsel), for respondent.

*Robert Abrams, Attorney-General* (*Shirley Adelson Siegel, James A. Sevinsky* and *Patricia Martinelli* of counsel), for Robert F. Flacke, Commissioner of the Department of Environmental Conservation of the State of New York, *amicus curiae.*

### OPINION OF THE COURT

TITONE, J.

In this CPLR article 78 proceeding, petitioner, which had applied to the Department of Environmental Conser-

vation (DEC) for a permit to operate a sand and gravel mine on its tract of land in the Town of Clinton, subsequently submitted a proposed draft environmental impact statement to the town as "lead agency". Before issuing a permit for the operation of such a facility DEC must receive a final environmental impact statement from the lead agency. The issue essentially presented on appeal is whether under the circumstances (as petitioner contends, and Special Term has held), the proposed draft impact statement which was submitted to the town by petitioner, must be deemed the final environmental statement because of the town's delay in accepting such proposal.

## THE FACTS

On October 5, 1979, petitioner, owner of a 52-acre tract of land located in the Town of Clinton, filed an application with the DEC for a permit to operate a sand and gravel mine on the tract, pursuant to the State Environmental Quality Review Act (ECL art 8). On July 29, 1980 the town was designated as the "lead agency" for the purpose of reviewing the possible environmental impact of the proposed activity (ECL 8-0111). After obtaining supplemental information from the petitioner, the town in a "Notice of Determination of Significance" dated September 25, 1980, informed petitioner of possible significant environmental effects, which it identified. Specifically, the town noted that the proposed sand and gravel mining operation might substantially and adversely change noise level, increase the potential for erosion and drainage problems, create a material conflict with the community's existing land use plant, create a hazard to human health and the environment, and substantially change the use of the land.

On February 4, 1981, or some four months after receiving a copy of the "Notice of Determination of Significance", petitioner submitted a four-page environmental impact statement (referred to by the town as a "proposed" draft environmental impact statement [proposed DEIS]) which supposedly addressed all the potential environmental problems raised by the town. On April 10, 1981 petitioner's attorney, in a letter addressed to the DEC, requested that a mining permit be issued to his client on the ground that the time had expired in which the town as a "lead agency"

had to act on the impact statement submitted by petitioner on February 4, 1981. In response, the regional attorney for DEC, by letter dated April 21, 1981, advised petitioner's attorney that contrary to the position taken by him in his letter of April 10, there still was no DEIS, since although his client had concededly submitted a document as a proposed DEIS to the town and DEC, the town apparently had not accepted such document as a DEIS pursuant to 6 NYCRR 617.8 (b) (quoted *infra*). DEC's attorney also opined that it is clear under 6 NYCRR 617.3 (a) that DEC may not issue a permit until a final environmental impact statement (FEIS) has been filed, and that he could not find in 6 NYCRR Part 617, a period of time within which a lead agency is required either to accept or reject a submission which an applicant proposes as a DEIS.

Petitioner commenced the instant article 78 proceeding on May 13, 1981. (As of that date the town had not yet informed petitioner of any action taken by it on the latter's submission. However, by letter dated May 19, 1981, the town supervisor, in rejecting petitioner's submission, advised petitioner that its proposed DEIS did not satisfy the requirements of 6 NYCRR 617.14, entitled "Preparation and content of environmental impact statements."*) It contended in its petition that the document it "filed" with the town as "lead agency" on February 4, 1981, was a DEIS, that since no action was taken by the town on the subject document, such as the scheduling and conducting of a hearing within 60 days of its "filing", the "lead agency" had, in effect, accepted petitioner's DEIS, and as a result no FEIS was needed pursuant to 6 NYCRR 617.8 (e) and 617.14 (h).

In its answer to the article 78 petition, the town, by its supervisor, adhered to DEC's interpretation of 6 NYCRR Part 617, namely that it is not the submission by an applicant such as petitioner of a DEIS (or proposed DEIS), which constitutes a "filing" of a DEIS and thus commences

---

* Specifically, the town, as "lead agency" informed petitioner that its proposed DEIS did not include a statement of the purpose or objective of the proposed "action", a statement of need, a statement of the environmental setting of the areas to be affected, and a description of reasonable alternatives to the action which achieve similar objectives.

the 60-day period for substantive review by the lead agency. Rather that review is commenced by the lead agency "filing" of a DEIS with the Commissioner of DEC, the regional office of DEC, and certain specified officials.

THE LAW

The following portions of the rules and regulations promulgated pursuant to the State Environmental Quality Review Act (6 NYCRR Part 617), are relevant in this case:

"617.8. Environmental impact statement procedures. (a) *When an agency is lead agency for an action involving an applicant, and has determined that an EIS is required, it shall immediately notify the applicant and all other involved agencies, in accordance with section 617.10(c) of this Part, in writing, that it is the lead agency and that an EIS is required. The applicant* or the agency, at the applicant's option, *shall prepare the draft EIS.* If the applicant does not exercise the option to prepare the draft EIS, the lead agency shall prepare it, cause it to be prepared or terminate its review of the action.

"(b) *When the applicant prepares the draft EIS, the draft EIS shall be submitted to the lead agency which shall determine whether to accept it as satisfactory with respect to its scope, content and adequacy for purposes of this Part.*

"(c) *When the lead agency has completed a draft EIS or when it has accepted a draft EIS prepared by an applicant,* the lead agency shall *file a notice of completion of the draft EIS and a copy of the draft EIS in accordance with the requirements set forth in section 617.10 of this Part.* Agencies shall provide for a commenting period on the draft EIS, to be not less than 30 calendar days.

"(d) *When the lead agency has completed a draft EIS or when it has accepted a draft EIS prepared by an applicant, the lead agency shall determine whether or not to conduct a public hearing concerning the action.* In determining whether or not to hold a hearing, the lead agency shall consider the degree of interest shown by other persons in the action, and the extent to which a public hearing can aid the agency decision-making processes by providing a forum for, or an efficient mechanism for the collection of,

public comment. If a hearing is to be held, the lead agency shall:

"(1) *file notice thereof in accordance with section 617.10 of this Part.* Such notice may be contained in the notice of completion of the draft EIS. The notice of hearing shall also be published, at least 14 calendar days in advance of the public hearing, in a newspaper of general circulation in the area of the potential impacts and effects of the action.

"(2) *The hearing shall commence not less than 15 calendar days nor more than 60 calendar days after the filing of the draft EIS pursuant to section 617.10 of this Part.* When an SEQR hearing is to be held, it shall be incorporated into existing hearing procedures wherever practicable.

"(e) Except as provided in paragraphs (1) and (2) of this subdivision, *the lead agency shall prepare or cause to be prepared a final EIS, within 45 calendar days after the close of any hearing or within 60 calendar days after the filing of the draft EIS, whichever last occurs."* (Emphasis supplied.)

"617.10. Notice and filing requirements. (a) All notices, EIS's and other SEQR documents shall be prepared, filed, circulated and made available as prescribed in this section * * *

"(d) *Notices of completion of draft EIS's.* Whenever a draft EIS has been prepared, *a notice of its completion shall be prepared and filed as indicated below by the lead agency. The notice shall state that it is a notice of completion of a draft EIS, shall state the name and address of the lead agency* and the name and telephone number of a person who can provide further information, and *shall also contain the following:*

"(1) *a brief and precise description of the action covered by the statement, the location and nature of its potential environmental impacts and effects;*

"(2) a statement indicating where and how copies of the statement can be obtained from the lead agency; and

"(3) a statement that comments on the statement are requested and will be received and considered by the agency at a given address for a stated period (not less than 30 calendar days from the first filing and circulation of the

notice of completion, or not less than 10 calendar days following a public hearing at which the environmental impacts of the proposed action are considered).

"The notice of completion shall be filed as prescribed in subdivision (b) of this section, and shall be sent to the State clearinghouse and the relevant regional clearinghouse designated under Federal Office of Management and Budget circular A-95. The department shall publish all notices of completion of all draft EIS's in the *Environmental Notice Bulletin.*

"(e) *Draft EIS's. The draft EIS, together with the notice of its completion, shall be filed and made available for copying as follows:*

"(1) one copy with the commissioner;

"(2) one copy with the appropriate regional office of the department;

"(3) one copy with the chief executive officer of the political subdivision in which the action will be principally located;

"(4) if other agencies are involved in the approval of the action, with each such agency; and

"(5) one copy with persons requesting it. Where sufficient copies of a statement are not available, the lead agency may charge a fee to persons requesting the statement to cover its costs in making the additional statement available." (Emphasis supplied.)

### DETERMINATION OF SPECIAL TERM

Special Term held that petitioner had in fact "filed" the DEIS with the town and DEC on February 4, 1981, and from that date to May 13, 1981 when the instant article 78 proceeding was instituted, the town, as lead agency, had taken no action upon it. The court then opined that since the town had elected not to conduct a hearing in the matter, or prepare or cause to be prepared the FEIS within 60 days after the purported "filing" of the DEIS with it by petitioner, such inaction by the town, under 6 NYCRR 617.8 (e), caused the DEIS to "ripen * * * into a final EIS". Accordingly Special Term granted the application and directed the town to forward the FEIS to the DEC within

five days from the date of service of a copy of the order upon the town. We disagree with the reasoning of Special Term and its determination based thereon.

### DETERMINATION ON APPEAL

Contrary to the decision of Special Term, and the position taken by petitioner, there is no provision either in the Environmental Conservation Law, or in 6 NYCRR 617.8, which mandates that a lead agency must act upon a proposed DEIS submitted to it for acceptance by an applicant, such as the petitioner, within a specified period commencing from the date of such submission.

Simply put the mere submission under section 617.8 (b) of a proposed DEIS by an applicant is not the same as the "filing" either of (a) a completed DEIS prepared by the lead agency, or (b) a proposed DEIS submitted by an applicant *and "accepted" by the lead agency,* under 6 NYCRR 617.8 (c).

Elaborating further, as set forth in section 617.8 (e) the controlling event triggering the period in which the lead agency must prepare an FEIS is the "hearing" or the "filing" date. With respect to the preparation by the lead agency of an FEIS "within 45 calendar days after the close of any hearing" (6 NYCRR 617.8 [e]), such period is not pertinent in the instant matter since no hearing was ever held. The alternative 60-calendar-day period after the "filing" of an (accepted) DEIS (6 NYCRR 617.8 [e]), admittedly is pertinent.

However an analysis of sections 617.8 and 617.10 (c), when read in tandem, clearly reveals that it is not the mere submission of a proposed DEIS by an applicant which triggers the 60-day period within which an FEIS must be prepared, but rather *the filing, inter alia,* of a *proposed* DEIS of an applicant which *has been accepted as a DEIS by the lead agency.* This is the "filing" mandated by 6 NYCRR 617.8 (c); and the "filing" of such accepted DEIS must be made with the various officials and agencies mentioned in 6 NYCRR 617.10 (e).

The interpretation that the 60-day limitation is triggered, not by the mere submission by an applicant to a lead agency, of a proposed (but not as yet accepted) DEIS, but

rather by the acceptance of such proposal by the lead agency, is likewise the position taken by DEC, as is evidenced from the letter of DEC's regional attorney to the attorney for petitioner, dated April 21, 1981. Under ECL 8-0113 (subd 1) the Commissioner of DEC must adopt rules and regulations implementing the State Environmental Quality Review Act (ECL art 8). An agency's interpretation of regulations which it has promulgated is entitled to great weight and should be upheld unless irrational or unreasonable (*Matter of Sigety v Ingraham,* 29 NY2d 110; *Matter of Roosevelt Hosp. v New York State Labor Relations Bd.,* 27 NY2d 25). No such showing of irrationality or unreasonableness has been demonstrated by petitioner.

Petitioner contends that a lead agency should not be permitted to postpone indefinitely a decision whether to accept or reject a proposed DEIS submitted to it by an applicant, and certainly should not be able to use its unquestioned discretion to avoid making any decision. It notes that the town waited 3 months and 15 days before it notified petitioner of its decision to reject the proposal. It claims that such belated action was prompted, not by good faith, but by its commencement of the instant article 78 proceeding.

We agree that a lead agency does not have unbridled discretion to delay making a determination as to whether or not to accept a DEIS prepared by an applicant, especially in a situation such as the one at bar, where no hearing was held on the matter. However, although petitioner alleged, *inter alia,* that the town's failure to take any action with respect to its proposed DEIS "was arbitrary, capricious and constitutes a deprivation of property and rights of the Petitioner without due process of law", essentially it proceeded not on the premise that the town's failure to act constituted an abuse of discretion, but rather on the theory that the town failed to comply within the time prescription set forth in 6 NYCRR 617.8. In any event, we do not believe that petitioner has demonstrated that the approximately three and a half month period between its submission of its proposed DEIS and its ultimate rejection by the town was excessive as a matter of law.

Accordingly, the judgment under review must be reversed, on the law, and the proceeding dismissed, without costs or disbursements.

MOLLEN, P. J., THOMPSON and RUBIN, JJ., concur.

Judgment of the Supreme Court, Dutchess County, dated August 5, 1981, reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits.